# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| RYAN TRANSPORTATION SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
|  | ) CIVIL ACTION |
| v. | ) ) No. 04-2445-CM |
|  | ) |
| FLEET LOGISTICS. L.L.C., et al., | ) ) |
| Defendants. | ) ) ) |
|  | ) |
| FINANCIAL SERVICES OF AMERICA, L.L.C. and INTERMODAL DIRECT EXPRESS EQUIPMENT CORP., | ) ) ) ) |
| Third Party Plaintiffs, Counter Claimants, and Cross Claimants, | ) ) ) ) |
| v. | ) ) |
| JOHN WILLIAMS, et al., | ) ) |
| Third Party Defendants, | ) ) |
|  | ) |
| RYAN TRANSPORTATION SERVICES, INC., | ) ) ) |
| Counter Defendant, | ) ) |
| and | ) ) |
| FLEET LOGISTICS, L.L.C., et al., | ) ) |
| Cross Defendants. | ) ) |

| | |
|---|---|
| FINANCIAL SERVICES OF AMERICA, L.L.C., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EGL - EAGLE GLOBAL LOGISTICS, L.P., )<br>et al., )<br>)<br>Defendants. )<br>)<br>EGL - EAGLE GLOBAL LOGISTICS, L.P., )<br>)<br>Cross Claimant, )<br>)<br>v. )<br>)<br>JOHN J. WILLIAMS, et al., )<br>)<br>Cross Defendants. )<br>)| No. 04-2497-CM |
| FINANCIAL SERVICES OF AMERICA, L.L.C., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMPREHENSIVE LOGISTICS CO., INC., )<br>et al., )<br>)<br>Defendants. )| No. 04-2508-CM |

)

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Comprehensive Logistics Co., Inc.'s ("Comprehensive") Motion to Dismiss (Doc. 11 in Case No. 04-2508, now consolidated under Case No. 04-2445). Comprehensive moves to dismiss plaintiff Financial Services of America's ("FSA") complaint against it pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(6), and 28 U.S.C. § 1406(a), for lack of personal jurisdiction, improper venue and failure to state a claim upon which relief can be granted.

**I.    Facts**

FSA is a Florida limited liability corporation maintaining its principal place of business in New Jersey.

Comprehensive is a corporation chartered under the laws of the State of Ohio and maintains its principal place of business in Ohio. Comprehensive is not authorized to transact business in Kansas, nor is it chartered in Kansas as either a domestic or foreign corporation. Comprehensive's registered agent and registered office are located in Ohio. Comprehensive maintains no office in Kansas, owns no property in Kansas, maintains no employees in Kansas, maintains no telephone listing in Kansas, and does no advertising in Kansas or directed toward Kansans. Comprehensive does not solicit business in Kansas through a local office or otherwise. Comprehensive does not send agents into Kansas on a regular basis to solicit business. Comprehensive does not hold itself out as doing business in Kansas through advertisements, listings, bank accounts or otherwise.

Comprehensive entered into a Master Logistics Services Agreement ("Services Agreement") with Delphi Automotive Systems, LLC ("Delphi"), a Delaware limited liability company with its principal business

offices in Michigan, on March 15, 2004. Delphi is not a resident of Kansas. Comprehensive's duties under the Services Agreement include shipment management and execution, carrier management, and corrective action management. Comprehensive contends that, from the terms of the Services Agreement, and based upon the express understanding of both Delphi and Comprehensive, neither party contemplated the performance of any service under the Services Agreement within Kansas. Neither party was located within the State of Kansas when the contract was formed. No language in the Services Agreement contemplates anything having to do with Kansas.

Delphi entered into a contract with Fleet Logistics, LLC ("Fleet") wherein Fleet would carry goods to destinations. Comprehensive's role was to, from its offices in Ohio, monitor and verify the amount of billing and timely delivery of goods by Fleet and serve as the paymaster for valid invoices. Comprehensive had no direct contractual relationship with Fleet.

Intermodal Direct Express Equipment Corp. ("IDEE") is an Iowa corporation that has business offices in Kansas City, Kansas. FSA contends in its complaint and the affidavit attached to its complaint that Comprehensive placed orders or otherwise requested shipping services, by mail or by telephone, to the offices of IDEE in Kansas City, Kansas, and IDEE provided shipping services to Comprehensive by dispatching the appropriate equipment from its headquarters in Kansas City, Kansas. FSA contends that Comprehensive was in near constant contact with IDEE, making sure that the transportation services being managed for Delphi were "flowing" properly, and that, from time to time, Comprehensive would call about a Delphi load that had been "dropped" by another carrier, and would ask that Fleet send its equipment to the appropriate location and move those loads. Payments from Comprehensive were received at IDEE's

Kansas City, Kansas headquarters, and all of the equipment used to service this business was dispatched from and maintained at the headquarters in Kansas City, Kansas.

FSA further contends that Comprehensive did business with IDEE to move loads for Comprehensive's own account. For instance, Comprehensive would call and ask that IDEE bring a load of Comprehensive's back after delivering a Delphi load. FSA contends that this work was not part of Comprehensive's "management" of Delphi loads. FSA contends that some of the loads, including Delphi loads "managed" by Comprehensive, were billed to Delphi directly, and some were billed to Comprehensive. If IDEE believed that a load was Comprehensive's responsibility, whether it was a "Delphi load" or a Comprehensive load, IDEE would bill and expect to be paid by Comprehensive. When IDEE billed Comprehensive for transportation services, IDEE was paid directly by Comprehensive.

FSA contends that it and IDEE had entered into a factoring agreement, pursuant to which IDEE assigned to FSA all of IDEE's accounts receivable, including Comprehensive's account. FSA contends that Comprehensive received notice of the assignment of its IDEE account to FSA including, but not limited to, a notification on each invoice that payment for services provided was to be remitted to FSA. However, FSA contends that, despite receiving shipping services from IDEE, and despite receiving notice that payment for said services was to be made to FSA, Comprehensive has failed and refused to pay for services provided, and is now indebted to FSA, as assignee of the IDEE accounts, in the amount of $101,875, plus interest. FSA contends that, under the facts it has set forth, Comprehensive has transacted business in Kansas with regard to this lawsuit and that the court's exercise of personal jurisdiction over Comprehensive is proper.

Comprehensive contends that it did not contract for shipping services with IDEE and that IDEE did not provide shipping services for Comprehensive. Comprehensive contends that its role under the Services

Agreement was simply as a paymaster and administrator of transportation services contracted for by Delphi. Comprehensive contends that its only contact with Kansas occurred when it sent checks for valid invoices to IDEE in Kansas. Comprehensive contends that it has not transacted business within Kansas with regard to this lawsuit, has not entered into a contract with a resident of Kansas with regard to this lawsuit, does not own, use or possess any real estate situated in Kansas, and has not entered into an express or implied contract, by mail or otherwise, with a resident of Kansas to be performed in whole or in part by either party in Kansas, related to this lawsuit.

As a result of the conflicting facts presented by the parties on this issue, on September 29, 2005, pursuant to Fed. R. Civ. P. 12(b)(2), the court conducted an evidentiary hearing on the issue of personal jurisdiction. The parties presented arguments but no additional evidence during the hearing.[1]

**II.     Standard**

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff, *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the

---

[1] Notably, the court permitted FSA to conduct limited discovery on the issue of jurisdiction over Comprehensive prior to the hearing, but FSA chose not to do so.

claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984).

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994). A court lacking jurisdiction must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F. Supp. 279, 280 (D. Kan. 1995) (*citing Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). As the party seeking to invoke federal jurisdiction, plaintiff bears the burden of establishing that such jurisdiction is proper. *Basso*, 495 F.2d at 909. When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth Baseball League*, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993).

The Tenth Circuit has established the following standard to govern motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2):

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984) (citations omitted); *accord Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). However, if the court holds an evidentiary hearing on the issue of personal jurisdiction, plaintiff's burden is higher, and plaintiff must

-7-

establish personal jurisdiction by a preponderance of the evidence. Fed. R. Civ. P. 12(b)(2); *see also Wenz*, 55 F.3d at 1505.

In determining whether it has personal jurisdiction over a non-resident defendant, the court must apply a two-part test involving analysis under both the Kansas long-arm statute, Kan. Stat. Ann. § 60-308 (1994), and the Federal Constitution's Due Process Clause. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304-05 (10th Cir. 1994).

Under the long-arm statute, a non-resident submits to the jurisdiction of the State of Kansas as to any cause of action arising from the "[t]ransaction of any business" within Kansas. Kan. Stat. Ann. § 60-308(b)(1).

> "Business" is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state.

*Volt Delta Res., Inc. v. Devine*, 241 Kan. 775, 778 (1987). The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process. *Federated Rural Elec.*, 17 F.3d at 1305 (citing *Volt*, 241 Kan. at 777).

Under due process, personal jurisdiction requires "minimum contacts" between the non-resident defendant and the forum state, such that the defendant has purposefully availed itself of the privilege of conducting activities within the state. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The defendant must reasonably be able to anticipate being haled into court in the forum state. *Id.* at 1419; *Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 320 (D. Kan. 1995). In addition, jurisdiction in the

particular case must be reasonable, so as not to offend traditional notions of fair play and substantial justice. *Rambo*, 839 F.2d at 1419 n.6, *Pehr*, 874 F. Supp. at 320.

### III.   Analysis

Comprehensive contends that this court's jurisdiction is not appropriate under the Kansas long-arm statute because it has not transacted business within the State of Kansas, it did not enter into a contract with a resident of Kansas, nor was any contract to be performed in Kansas. Comprehensive further argues that this court's exercise of personal jurisdiction would not comport with the constitutional guarantee of due process. Comprehensive contends that it has not purposefully directed its activities toward Kansas, and it does not have systematic and continuous contacts with Kansas.

FSA contends that it has made a prima facie showing that the court's exercise of personal jurisdiction over Comprehensive is proper in that it has shown that Comprehensive affirmatively and purposefully reached into Kansas to further its business interests. FSA contends that, although the facts set forth by Comprehensive suggest otherwise, all factual disputes must be resolved in its favor and the motion to dismiss should be denied. Specifically, FSA contends that Comprehensive transacted business in Kansas by entering into contracts with IDEE for services which were to be performed, in part, in Kansas. FSA contends that Comprehensive was in near constant contact with IDEE and that Comprehensive, regardless of what it thought or expected when it entered into the contract with Delphi, directed its activities to Kansas to perform its work under the contract with Delphi. FSA contends that Comprehensive had IDEE move loads for Comprehensive's own account, and that such work created direct and purposeful contacts with Kansas on Comprehensive's behalf, separate from its contract with Delphi. FSA further contends that

Comprehensive initiated contacts with IDEE in Kansas, for the purpose of contracting for trucking services that were performed, in part, in Kansas.

FSA contends that Kansas has a strong interest in adjudicating disputes that involve trucking services provided from Kansas and ensuring that Kansas residents and their assignees receive payment for those services. While FSA acknowledges that it is a Florida entity, it believes it will be best able to receive convenient and effective relief in this court because it is a defendant in one of the cases consolidated with this one, all arising out of FSA's relationship with IDEE, Fleet and their customers. FSA contends that it did not come to this forum to pursue its claims, and instead had this forum thrust upon it by the filing of the first of the consolidated cases. FSA argues that, to require it to separate its claim against Comprehensive and litigate that claim in Ohio would be inconvenient to FSA and expose FSA to the possibility of inconsistent results.

Notably, as support for the allegations against Comprehensive in its complaint, FSA relies on an affidavit by Jessie Herd, who was employed by Fleet from approximately June 2003 through April 2004. Herd's affidavit states that he performed duties through August 2004, and had been told that the business had either been purchased by or operated by IDEE between April and August 2004. Herd's original position with Fleet was as a dispatcher; between April and August 2004, Herd moved into "overall management of the company, including accounts payable, accounts receivable, collections, internal accounting, payroll, and equipment management." In his affidavit, Herd characterizes the work with Comprehensive as partly handling loads directly for Comprehensive, and partly as handling loads managed by Comprehensive for Delphi. Herd appears to have no knowledge of the contractual relationship between Comprehensive and Delphi or between any of the entities at issue, and other than his own assertions, there is

no support for his statements that some of the loads were for Comprehensive itself, and not part of Comprehensive's contract to manage loads for Delphi.

Comprehensive contends that it communicated with Fleet for loads pertaining to its contract with Delphi, and that, while Delphi had a contract with Fleet, Comprehensive did not.  Neither Fleet nor IDEE provided trucking services directly to Comprehensive.  Delphi "instructed" Comprehensive to use Fleet as the carrier for its loads.  Comprehensive had no choice of which carrier to use, nor did it have a contractual relationship with Fleet.  Insofar as Comprehensive made phone calls to Fleet, the fact that Fleet has an office in Kansas has no bearing on Comprehensive's contract with Delphi.

Comprehensive was not a party to the transactions that may have occurred between Fleet and IDEE and had no contractual relationship with IDEE.  Comprehensive contacted the same person at Fleet at the same phone number even after the purported relationship between Fleet and IDEE began.  The phone numbers of the persons called never changed.  The addresses never changed.  At the time it entered into the contract with Delphi, Comprehensive had no knowledge that it would be contacting Fleet as a carrier, and had no knowledge that a carrier it would be directed to contact would have representatives located in Kansas.  Comprehensive claims that it never had knowledge that it was calling IDEE, let alone that it was calling IDEE in Kansas.

Finally, Comprehensive contends that the loads were always pursuant to Comprehensive's contract with Delphi and were Delphi loads.  Comprehensive never contacted Fleet to move loads for Comprehensive's own account or for an account separate from the Delphi contract.  Comprehensive never called Fleet (or IDEE) to ask it bring back a non-Delphi load.  Comprehensive contends that FSA has failed

to allege any facts, and there is a complete absence of evidence, that Comprehensive had continuous and systematic contacts with Kansas.

In support of its contentions, Comprehensive relies on the affidavits of Lee Simmerman, its vice president of finance. Mr. Simmerman attached to his first affidavit the Services Agreement between Comprehensive and Delphi and appears to have a clearer grasp of Comprehensive's relationships with the other entities at issue, as well as its contractual obligations, than does Mr. Herd. Notably, Mr. Simmerman was available at the evidentiary hearing on this issue for cross-examination by FSA. FSA chose not to ask Mr. Simmerman any questions.

Having considered the parties' arguments and facts, Kansas' long-arm statute, and the Federal Constitution's Due Process Clause, and even construing the well-pled facts in FSA's complaint in FSA's favor (as distinguished from the conclusory allegations), the court finds that FSA has not met its burden to show, by a preponderance of the evidence, that the court's exercise of jurisdiction over Comprehensive is proper in this case. Neither FSA nor Comprehensive is a resident of Kansas. Comprehensive did not enter into a contract with a Kansas resident or transact business on its own behalf in Kansas. Comprehensive acted as an agent for Delphi, and pursuant to its Services Agreement with Delphi, Comprehensive was directed to work with Fleet to arrange for shipping services and payment of such services on Delphi's behalf.

From the pleadings, it appears that Fleet is a Missouri corporation that conducts business in Kansas. Apparently IDEE, which has its headquarters in Kansas, took over some or all of Fleet's business in mid-2004, including Delphi's account. IDEE later assigned to FSA all of IDEE's accounts receivable, including Delphi's account, for which FSA alternately contends either Delphi, or both Comprehensive and Delphi, are

-12-

responsible. However, under the Services Agreement, Comprehensive was not made aware what company it would work with to arrange for shipping services on Delphi's behalf and was given no choice in working with Fleet and later IDEE. It is not apparent from the facts set forth that Comprehensive was even aware that it was contacting a Kansas company when it did contact IDEE. FSA also has not shown, with regard to the claims it has alleged against Comprehensive, that any Kansas resident has been injured.

The court finds no evidence that Comprehensive made a specific or intentional effort to conduct business in the State of Kansas. The court further finds that the nature of Comprehensive's contacts with Kansas do not "represent an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum state," *Rambo*, 839 F.2d at 1418-19, or that Comprehensive should have anticipated being "haled into court" in Kansas, i*d.* at 1419. Accordingly, the court finds that the evidence does not support this court's exercise of either specific or general jurisdiction over Comprehensive under Kansas' long-arm statute or the Federal Constitution's Due Process Clause. In fact, it appears that FSA is attempting to backdoor jurisdiction over its claims against this defendant through Comprehensive's minimal contact with one company that had its headquarters in Kansas, which is not even a party to the claims alleged in this specific lawsuit. FSA's further argument regarding the convenience of this forum due to its involvement in the consolidated cases in this forum does not alter the court's finding.[2]

**IT IS THEREFORE ORDERED** that defendant Comprehensive Logistic Co., Inc.'s Motion to Dismiss (Doc. 11 in Case No. 04-2508, now consolidated under Case No. 04-2445) is granted.

Dated this 21st day of October 2005, at Kansas City, Kansas.

---

[2] Because the court finds that jurisdiction over Comprehensive is not appropriate, the court does not reach Comprehensive's arguments regarding improper venue and failure to state a claim upon which relief can be granted.

-13-

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**